NEAL (RAILROAD CO. v.). See Case No. 11,534.

## Case No. 10,066.

### In re NEALE.

[3 N. B. R. 177 (Quarto, 43); [1] 1 Am. Law T. Rep. Bankr. 295.]

District Court, D. North Carolina. 1869.

BANKRUPTCY—REGISTRATION OF DEED OF ASSIGNMENT—CONSTITUTIONAL LAW.

1. Under the grant of power to frame "a uniform system of bankruptcy," congress has full authority to make such regulations in regard to the probate of deeds of assignment as it may deem best for carrying out the purposes of the law, without regard to the state laws regulating the registration of deeds.

2. Under the bankruptcy law of 1867 (section 14, cl. 61), a register of deeds in South Carolina must admit to probate a deed of assignment executed under the bankrupt law, upon a certificate of the clerk of the federal district court that the same is a copy of the assignment on file in his office, without requiring the same to be proved before a clerk of the superior court of the state, as required by the state laws.

[Cited in Taylor v. Irwin, 20 Fed. 617.]

By R. F. LEHMAN, Register:

I, R. F. Lehman, one of the registers of said court in bankruptcy, do hereby certify that in the course of the proceedings in said matter before me the following question arose pertinent to said proceedings, viz.: I had been notified by W. M. Pippin, the assignee of Charles E. Neale, bankrupt, that the probate judge of the county of Edgecombe refuses to admit to probate the assignment executed by me, under the 14th section of the United States bankrupt act [of 1867 (14 Stat. 522)], to him, as assignee, upon the ground that the register must appear before a judge

1 [Reprinted from 3 N. B. R. 177 (Quarto, 43), by permission.]

of probate and acknowledge his signature. This the register declines to do, for the reason that in his opinion this proceding is unnecessary, and the state officer is bound to admit the deed to probate without it. Section 14, general clause 46, provides that the register shall (where there is no opposing interest), by an instrument under his hand, convey to the assignee all the estate, real and personal, of the bankrupt. General clause 61 provides that the assignee shall, within six months, cause the assignment to him to be recorded in every registry of deeds or other office within the United States, where a conveyance of lands owned by the bankrupt ought by law to be recorded. The assignment of bankrupt's effects is an official act, conveying property held by a judicial officer of the United States in trust to an assignee under authority of an act of congress. The mode of assignment is such as to make it a record of the court. It is not the record of a state court requiring to be exemplified, under the act of congress of May 26th, 1790, but of a United States court, which authenticates itself. In the case of Pepoon v. Jenkins, 2 Johns. Cas. 119, a record of a court of the United States was offered in the supreme court of New York, and upon issue joined upon a plea of nul tiel record was held sufficient, though it was merely certified by the clerk as a copy under the seal of the court. In this case the deed is under the hand of the register and the seal of the court. Independently of the common law on the subject, under G. O. 54, even a certified copy under the seal of the court is conclusive,—a portion of the original. The assignment then is a record of the United States district court, is conclusive evidence in the form in which it now stands of the transfer of the bankrupt's assets in all courts, and should be ordered to be registered by the probate judge.

The provisions of the Code of Civil Procedure in relation to the probate of deeds is clearly not intended to refer to official deeds of the officers of the courts. Nor, if it were so intended, is it conceived that the state could affect the operation of the bankrupt act. The registration of the assignment is clearly necessary to the proper working of the act. If the state could prescribe the nature of proof of its execution, it might make it so difficult as to practically be impossible. This is evident when it is considered tha prior to the late amendments to the Code it would have been, if the view which is taken by the probate judge is correct, necessary for the register, in each case of an assignment which conveyed property in any county in the state, to go personally to that county and acknowledge the deed. I therefore cannot, as register, perform the superfluous act of acknowledging the deed. If the probate judge declines to admit the assignment to probate, his decision can be reviewed by a judge of the supreme court. It is therefore deemed unnecessary to intimate an opinion

as to any remedy which may be had in the premises through the United States authorities, but the delay consequent upon a proceeding before the state courts might prevent the due registration of this deed within the six months. It is therefore conceived that an order might issue directly from the district judge to the probate judge of said county, commanding him to do what the law requires.

BROOKS, District Judge. The question presented by the certificate of Mr. Register Lehman in this case is whether the deed of assignment executed to the assignee by the register (there being no opposing interest), and the same duly certified by the clerk under the seal of the court, should be proved before a clerk of the superior court, and be by him certified, and ordered to be registered according to the provisions of the law of North Carolina in relation to deeds executed by private parties, before the same can be registered. I have examined carefully the reasons assigned by the register for the opinion expressed by him, and fully concur in both his reasoning and conclusion. I have no doubt but that congress of the United States has full power, in framing "a uniform system of bankruptcy," to adopt such provisions as it may think proper in regard to the probate of any deed or assignment that may become necessary in carrying out the purposes of the law. Much importance should be attached to that expression "uniform system through the United States." All of the states, I believe, have their bankrupt or insolvent laws; but these are not respected beyond the limits of the state passing such law, and the reason why they are not respected beyond the limits of the state passing them is that there is no uniformity in the system of the state bankrupt laws; many of them resembling each other in many respects, no two alike in every respect, hence no two with the same system. It could not properly be contended that congress, under the power expressly delegated by the constitution, could pass one system of bankruptcy laws to be in force in one state, and altogether another and a different system to be in force in another state. Indeed, if there were any essential differences, it would not conform to that important requirement. It would not be "a uniform system." The contrary might possibly be contended for if the power to pass a bankrupt law by congress was claimed as a constructive or implied right. But, when the power is expressly given, it excludes any implied power, and, when a particular system is prescribed, it effectually excludes any other system than the one provided. Then the only system of bankruptcy laws which congress has the power to pass is a uniform one, —one which requires the same acts and same duties from the officers appointed to execute the law in all the states, and producing the same general results in all the states, with-

out regard to the important differences existing in the laws of the different states.

If, in preparing and passing the present system of bankrupt laws, congress has omitted to make any provision in regard to executing and registering the conveyances or assignments required, I would readily hold that the state laws should be conformed to. If I am not altogether wrong in the views I have expressed, then the only question remaining to be considered is whether the bankruptcy act prescribes the forms to be observed in executing and preparing this instrument (the assignment) "to be recorded in every county or registry in the United States in which lands of the bankrupt are situate." I think the act already so provides. The object in requiring the assignment to be recorded is not to vest a title in the assignee, for he has title, though the assignment might never be recorded. The assignee may use it as evidence of his title in the courts, though the same may not have been registered. In this an assignment under the provisions of the bankruptcy act is essentially different from a deed or assignment (though absolute) made under the provisions of the laws of North Carolina. Under the latter, registration is necessary to the perfecting the title, though the deed be absolute. But the purpose in requiring the assignee to "cause the assignment to be recorded in every county or registry in the United States in which lands of the bankrupt are situate" is that every purchaser of land at an assignee's sale may have recourse to a certified copy from such registry, as a link in his claim of title in any suit he may bring for the possession, or in any suit in respect to the property which he, or his heirs, or others claiming under him, may desire to bring thereafter. Registration is necessary for the safety of such purchaser, for there is but one original assignment, which is filed in the district court clerk's office. It might be destroyed or lost, and often most inconvenient to have recourse to. Where this law is observed the loss of the original would work no damage, or work inconvenience to the purchaser or any other claiming under him, for they have recourse to a "certified copy" from the registry convenient, and which the act declares "shall be evidence thereof in all courts." It seems to me that any other conclusion would not be sustained by the language or the clear meaning of the act. In the 1st paragraph of the 14th section, after providing that the assignment shall be made by the judge or register, we find the following: "And thereupon by operation of law the title to all such property and estate, both real and personal, shall vest in the assignee." There is nothing preceding this language in regard to registration. Then what do we find subsequently in the same section to sustain the view that registration is not necessary to perfect the title of the assignee, and also that there is no other probate contemplated as necessary

than the attestation of the clerk and affixing his seal of office. That this means the clerk of the district court of the United States there can scarcely be room for doubt. After declaring that the assignee may sue for and recover the estate, prosecute and defend all suits in which the bankrupt may be a party, we find the following: "And a copy duly certified by the clerk of the court under the seal thereof of the assignment made by the judge or the register (as the case may be) to him as assignee, shall be conclusive evidence of his title as such assignee to take, hold, sue for, and recover the property of the bankrupt." And to show further that no other proof or probate of the assignment appears to have been made in this case is necessary, I refer to the language of that paragraph of the 14th section which relates directly to registering the assignment. It is as follows: "And shall within six months cause the assignment to him to be recorded in every registry of deeds," &c. If the law had contemplated proof as required by the state laws, is it not most likely the words proved and recorded would have been used?

My opinion is that such assignment does not require to be proved before a clerk of the superior court, or his certificate, to prepare it for registration, but that registers of deeds must record the same upon a certificate of the clerk of the district court that the same is a copy of the assignment on file in his office, with his seal affixed, upon demand that same shall be recorded, and a tender to him of the fees allowed him for such service by the laws of the state. Let this be certified to Mr. Register Lehman.